**No. 23-1389**

*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# FIRST CIRCUIT

## SHAWN MCBREAIRTY

*Plaintiff-Appellant,*

v.

## HEATH MILLER, IN HIS PERSONAL AND OFFICIAL CAPACITIES; SCHOOL BOARD OF RSU22

*Defendants-Appellees.*

*On Appeal from the United States District Court*
*for the District of Maine*
*No. 1:23-cv-00143*
*The Honorable Nancy Torresen*

## APPELLANT'S REPLY BRIEF

MARC J. RANDAZZA
JAY M. WOLMAN
ROBERT J. MORRIS II
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 888-887-1776
ecf@randazza.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... II

1.0    INTRODUCTION ......................................................................... 1

2.0    FACTUAL BACKGROUND ........................................................... 1

   2.1    Forum Requirements and BEDH Policy ................................... 1

   2.2    Viewpoint Discrimination ...................................................... 3

3.0    ARGUMENT ................................................................................ 4

   3.1    Rule 2 is Facially Invalid and the New Rule 3(c) Is No Better ............... 4

   3.2    Rule 2 is the Applicable Regulation on Appeal ......................... 7

   3.3    Rule 2 is not Reasonable in Light of the Forum and it is not Viewpoint Neutral, and Neither is Rule 3(c) ...................................................... 10

   3.4    Rule 2 is Viewpoint Discriminatory As-Applied ..................... 12

   3.5    Rule 2 is Vague and McBreairty Preserved his Argument ..................... 17

   3.6    The Remaining Injunctive Factors Support Injunctive Relief ................. 20

     3.6.1 McBreairty Suffers Irreparable Injury ............................... 20

     3.6.2 Injunctive Relief Would Not Impose Any Harm to Appellees and the Public Interest Favors McBreairty ................................................... 20

4.0    CONCLUSION............................................................................. 21

CERTIFICATE OF COMPLIANCE ..................................................... 22

CERTIFICATE OF SERVICE.............................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Allied Home Mortg. Cap. Corp. v. Mark*,
  No. 12-cv-10158, 2014 U.S. Dist. LEXIS 139436 (D. Mass. Sept. 30, 2014) ....18

*Bayley's Campground, Inc. v. Mills*,
  985 F.3d 153 (1st Cir. 2021) ........................................................................7, 9, 13

*Bos. Bit Labs v. Baker*,
  11 F.4th 3 (1st Cir. 2021) ........................................................................................9

*Christian Legal Soc. Chapter v. Martinez*,
  561 U.S. 661 (2010) ..............................................................................................16

*Davison v. Rose*,
  19 F.4th 626 (4th Cir. 2021) ..................................................................................12

*Fairchild v. Liberty Indep. Sch. Dist.*,
  597 F.3d 747 (5th Cir. 2010) ......................................................................5, 12, 19

*Hermon School Dept. v. McBreairty*,
  Case No. Pensc-Civ-2022-00056 (Me. Super.) .....................................................17

*Hermon School Dept. v. McBreairty*,
  Pen-23-191 (Me.) ...................................................................................................17

*Itek Corp. v. First Nat. Bank of Bos.*,
  704 F.2d 1 (1st Cir. 1983) ..............................................................................7, 8, 9

*Keyishian v. Board of Regents*,
  385 U.S. 589 (1967) ..............................................................................................11

*McBreairty v. Sch. Bd. of RSU22*,
  616 F. Supp. 3d 79 (D. Me. 2022) ..................................................................14, 15

*Napert v. Gov't Emps. Ins. Co.*,
  No. 13-cv-10530, 2013 U.S. Dist. LEXIS 108077 (D. Mass. Aug. 1, 2013) ......18

*Respect Maine Pac v. McKee*,
  622 F.3d 13 (1st Cir. 2010) ...................................................................................20

*Solmitz v. Maine Sch. Administrative Dist*,
   495 A.2d 812 (Me. 1985) ........................................................................11

*United States v. Ven–Fuel, Inc.*,
   758 F.2d 741 (1st Cir.1985) ......................................................................4

**STATUTES**

20-A M.R.S. § 1001 ..........................................................................passim

20-A M.R.S. § 6101 ..........................................................................passim

**REGULATIONS**

BEDH Public Participation Policy Rule 2 ...........................................passim

BEDH Public Participation Policy Rule 3(c) ......................................passim

## 1.0    INTRODUCTION

The government cannot thwart the First Amendment under the guise of simply calling any criticism of a government employee a "personnel matter."  Confidential personnel matters were never implicated in this case. Plaintiff-Appellant McBreairty made statements about a school employee during public comment at school board meetings in a forum created by the state of Maine for that very purpose.  Defendants-Appellees took adverse action against McBreairty for criticizing their employee while lauding a speaker who made positive comments about the same employee. This is viewpoint discrimination.  The Maine Legislature mandated that school boards must hear public comment on *school and education matters* during school board meetings; teacher performance is a quintessential school and education matter. It is immaterial that the regulation at issue was replaced after suit was filed; any such iteration must be enjoined.  The District Court's order should be reversed.

## 2.0    FACTUAL BACKGROUND

### 2.1    Forum Requirements and BEDH Policy

The Maine Legislature provides the contours for public comment during a school board meeting.  Pursuant to 20-A M.R.S. § 1001(20), a school board *shall* provide an opportunity during school board meetings "*for the public to comment on school and education matters*." A school board may adopt "reasonable standards for the public comment period, including time limits and conduct standards." *Id.*  Under the Freedom of Access Act (FOAA), the Maine Legislature determines what

qualifies as confidential personnel information and personnel matters for government school employees. *See* 20-A M.R.S. § 6101(2). A school board cannot limit public comment during school board meetings about government school employees beyond what qualifies as confidential under 20-A M.R.S. § 6101.

At the time of Appellees' unconstitutional acts, Rule 2 of the BEDH Public Participation Policy stated:

> Confidential personnel information will not be shared in a public session. No complaints or allegations will be allowed at Board meetings concerning any person employed by the school system or against particular students. Personnel matters or complaints concerning student or staff issues will not be considered in a public meeting but will be referred through established policies and procedures.

(AA010). After the present appeal was filed, Appellees adopted a new BEDH Public Participation Policy. Rule 3(c) of the new policy ("Rule 3(c)") replaced Rule 2. Rule 3(c) states:

> c. Discussion of personnel matters is not permitted during the public comment period due to the privacy, confidentiality and due process rights of school unit employees. **For purposes of this policy, "discussion of a personnel matter" means any discussion, whether positive or negative, of job performance or conduct of a school unit employee.**

(Response Br. at Add2 02). This change of language cures nothing, and to whatever extent it could, it now conflicts with 20-A M.R.S. § 1001(20).

## 2.2    Viewpoint Discrimination

The facts are not in dispute. On October 19, 2022, Dolly Sullivan, a Program Director for Educate Maine, made a public comment at the RSU22 School Board meeting. (AA002 at ¶¶10-12; AA014 & Dkt.No. 1-3 (video exhibit)).  She provided an assessment of RSU22 employee Kelsey Stoyanova's service as the 2022 Maine Teacher of the Year, referring to her as "thoughtful," "intentional," "brave," and "brilliant." (*Id.*). Defendant-Appellees applauded Sullivan and thanked her for praising their employee.  (*Id.*).

On February 15, 2023, at the RSU22 School Board meeting, during the public comment period, McBreairty played a prerecorded statement criticizing Stoyanova and her curriculum.   (AA014 & Dkt.No. 1-3 (video exhibit); AA003 at ¶13). Defendant Appellee Miller objected to McBreairty criticizing Stoyanova. (*Id.* at ¶¶14-16).  Miller ordered McBreairty to stop his critical public comment and sit down. (*Id.* at ¶16). The School Board cut the video feed, stopped the meeting, and called the Hampden Police Department to remove McBreairty.  (*Id.*).

On March 15, 2023, McBreairty returned to RSU22 for the School Board meeting making public comments, hoping that Defendants-Appellees would have realized their unconstitutional error made in the prior meeting.  (AA022 & Dtk.No. 1-5 (video exhibit); AA004 ¶¶ 18-19). Miller again prevented McBreairty from finishing speaking and ordered him to leave once McBreairty uttered the name of an

RSU22 employee.  (*Id.* at ¶¶ 19-21).  Praising Stoyanova was permitted; criticism was prohibited.

## 3.0   ARGUMENT

### 3.1   Rule 2 is Facially Invalid and the New Rule 3(c) Is No Better

Ignoring the plain language of a rule that only prohibited criticism, Appellees take the position that the mere utterance of an employee's name was prohibited under Rule 2.  (Response Br. at 21-24).   The District Court wrongly accepted this interpretation of Rule 2, holding that the "personnel-matter rule" bans discussion of "*all* matters relating to school personnel, regardless of whether they are complimentary or critical of the RSU 22 employee in question."   (ADD011) (emphasis in original).  The District Court essentially blue-penciled Rule 2 without saying so, rendering the "complaints or allegations" portion of the rule mere surplusage, in contravention to normal canons of interpretation.  *See, e.g.*, *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751–52 (1st Cir.1985) (providing that "no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous").  The rule is not viewpoint neutral and fails constitutional scrutiny.[1]

---

[1] Appellees do not argue that either iteration of the rule is justified on a content-neutrality analysis based on the forum and, thus, only argue as to the forum and whether it is viewpoint neutral.  (Response Br. at 23).

Confidential personnel information and personnel matters are a red herring. It does not follow from Rule 2 stating that personnel matters and complaints "will not be shared" and "will not be considered" that there is a prohibition on the public discussing all matters relating to government school employees.  What a teacher does openly in their classroom is not "confidential," let alone a "personnel matter."

Maine's FOAA statutes provide guidance on what qualifies as confidential personnel information and personnel matters subject to referral.  The BEDH Policy refers to the FOAA statutes. (*See* AA010).  Therefore, the FOAA statutes control. Under 20-A M.R.S. § 6101, the scope of government school employment information that must remain confidential is defined.  "Complaints, charges of misconduct, replies to complaints and charges of misconduct and memoranda and other materials *pertaining to disciplinary action*" must be kept confidential. 20-A M.R.S. § 6101(b)(6) (emphasis added).  A negative comment, while a "complaint" in common parlance, is not a formal complaint that is within the scope of the definition.  (If the common parlance is within the definition, all that means is that the incorporation of the statutory definition for purposes of Rule 2 is unconstitutional viewpoint discrimination.)

"Personnel matters" generally mean "appointment, employment, evaluation, reassignment, duties, discipline, or dismissal." *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 n.47 (5th Cir. 2010).  Similar limits on personnel matters

are provided under 20-A M.R.S. § 6101(b) and properly defines what qualifies as confidential personnel information and personnel matters under Rule 2. McBreairty never discussed any personnel matter, let alone a confidential one.

The argument raised by Appellee in its opposition brief to the court below was that personnel matters informs what complaints and allegations means under Rule 2. (AA051-053). But, if that were accurate, awards and commendations would also be prohibited as "personnel matters," and yet they are not.

The updated policy is no better. It discriminates on the basis of viewpoint. It allows one to say "I support the pedagogy of the teachers of RSU22," but stops the speaker from adding "except Teacher X, whose pedagogy I oppose." Rule 3(c), under the pretext of permitting comment as to a group of school unit employees, discriminates on the basis of viewpoint whenever a singular school unit employee distinguishes themselves from the rest.

Appellees' broad interpretation of Rule 3(c) is viewpoint discriminatory and not reasonable for the purpose of the forum. The public is forced to raise issues in a theoretical context rather than through providing concrete examples. It is fundamentally different to say that 'math is not being taught properly in school' as compared 'there is a certain teacher who is not teaching math properly in school.'

The rule is unreasonable. If there is only one high school physics teacher at RSU22, can the public comment about the physics instruction? It is clear from the

context that making a comment about the physics curriculum is a comment on the job performance of the only high school physics teacher at RSU22, who is easily identifiable at RSU22. Both versions of the rule are viewpoint discrimination, and it is not reasonable (or workable) in the forum designated by the Maine Legislature pursuant to 20-A M.R.S. § 1001(20) and 20-A M.R.S. § 6101.

### 3.2    Rule 2 is the Applicable Regulation on Appeal

Appellees agree that the case is not moot. (Response Br. at 17). However, Appellees argue that a revised policy they adopted after the appeal was filed controls. (Response Br. at 17). There is no support for this position. If this Court finds that Appellees' revised policy controls, then the case must be remanded to the District Court. However, this Court should reverse and enjoin Appellees' Rule 2 (and Rule 3(c)). Otherwise, school boards can just amend their policy during the pendency of appeal, running "the risk of effectively insulating [them] from judicial review." *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 158 (1st Cir. 2021).

The First Circuit cases cited by Appellees involved the government's use of *emergency* powers. In *Itek*, the dispute occurred during the Iran Hostage Crisis. *Itek Corp. v. First Nat. Bank of Bos.*, 704 F.2d 1 (1st Cir. 1983). The dispute concerned the validity of demands made on standby letters of credit in favor of an Iranian bank. *See id.* at 3-6. Presidential Executive Orders were issued under emergency powers, and Treasury regulations concerning Iranian financial assets were promulgated and

subsequently amended. *See id.* at 4. This Court consolidated two appeals. *See id.* 4-6. The first appeal was from the district court granting summary judgment against Defendant First National Bank of Boston ("FNBB") and Bank Melli under Treasury's initial regulation. *Id.* at 5. A second appeal was filed after the district court denied FNBB's motion to vacate the judgment, relying on the Treasury's amended regulations. *Id.*

After Treasury amended its regulation, the United States filed a Statement of Interest *with the district court*, stating the government's position that the "amended regulations should apply to judgments rendered prior to the effective date of the amendments, but not yet final because still subject to appeal." *Id.* On appeal, this Court ruled that the Treasury's power was constitutional and remanded the case to the district court to decide whether the standby letters were valid under the new regulations. *Id.* at 11.

Here, Appellees did not act under emergency powers nor on any emergency basis—they purportedly engaged in voluntary cessation of the original rule in response to McBreairty's lawsuit, which necessarily precludes mootness. Appellee's position would restrict the jurisdiction of this Court. As this Court acknowledged in *Itek*, at some point, the judiciary must be able to review government actions. The Court should enjoin Rule 2 for its unconstitutionality.

Alternatively, Appellees' argument that this Court cannot review whether Rule 2 was constitutional "suspend[s] entirely judicial activity." *Id.* at 10.

In *Bos. Bit Labs v. Baker*, this Court held the voluntary cessation doctrine did not apply because the governor issued an order declaring an end to the COVID-19 state of emergency and revoked all COVID-19 orders previously promulgated under emergency powers "not to avoid a court judgment, but in response to the progress made in battling the pandemic." *Bos. Bit Labs v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021). This Circuit found that since Baker had relinquished his authority to issue further decrees, that there was no longer a danger that he would issue another. Therefore, this Court declined to review and affirmed the district court's decision that the case was moot. This is not the same.

On the other hand, in *Bayley's Campground, Inc. v. Mills*, while the case was pending on appeal, COVID-19 pandemic Executive Order 34 was rescinded and replaced by a new Executive Order 57. 985 F.3d 153, 158 (1st Cir. 2021). This Court ruled the issue was not moot and evaluated Executive Order 34 under the preliminary injunction framework. *Id.* 157-58. This Court noted that a "contrary ruling, moreover, would run the risk of effectively insulating from judicial review" an overbroad rule. *Id.* at 158.

Here, the concern over evading judicial review in *Itek* and *Mills* is directly relevant. Any time a school board policy that violates a citizen's rights is challenged

on appeal, the government could amend its policy to evade judicial review. In practical effect, this would restrict this Court's jurisdiction and effectively insulate school board policies from appellate review. The Court should send a clear message that Rule 2 is unconstitutional and that the gamesmanship of adopting Rule 3(c), which is also unconstitutional, will not be tolerated.

### 3.3 Rule 2 is not Reasonable in Light of the Forum and it is not Viewpoint Neutral, and Neither is Rule 3(c)

The Maine Legislature requires that a school board shall provide a public comment period for "school and education matters." 20-A M.R.S. § 1001(20). Appellees argue that, in derogation of the statute (without admitting as much), they can completely cut off the public from discussing government school employees during public comment at school board meetings under Rule 2 and their revised Rule 3(c). (Response Br. at 24-27). However, the Maine Legislature defined the contours of the forum. While Appellees may place limits on the length of time a person can speak and guidelines for conduct, they cannot restrict the content further than the limits established by the legislature. Appellees' interpretation of Rule 2 restricts the forum beyond what is permissible, and the revised Rule 3(c) is similarly impermissibly restrictive.

Appellees seek to ban all discussions related to government school employees. But, school employees are the foundation of education and school matters. Prohibiting all public comment related to government school employees

substantially limits the content and viewpoints that are permitted to be discussed, far beyond what is constitutionally permissible in the forum established by the Maine Legislature pursuant to 20-A M.R.S. § 1001(20). None of the cases cited by Appellee have a similar mandate from the legislature that dictates the content that must be allowed in the forum. Furthermore, any restrictions on discussing personnel matters cannot go further than what is determined as confidential personnel information and personnel matters as defined under 20-A M.R.S. § 6101(b).

Appellees claim that RSU22 "does not shy away from the criticisms that often accompany" public comments on school and education matters. (Response Br. at 25). However, they argue that "school safety" should abrogate the forum requirements under 20-A M.R.S. § 1001(20) despite there being no record that McBreairty has ever threatened anyone or put anyone in danger. Appellees argue that it is necessary to prohibit discussion of government school employees due to safety concerns. (Response Br. at 24-26). Appellees' argument is a veiled attempt to "cast a pall of orthodoxy over the classroom," *Keyishian v. Board of Regents*, 385 U.S. 589, 603 (1967), and "to restrict impermissibly the marketplace of ideas" within school board meetings. *Solmitz v. Maine Sch. Administrative Dist*, 495 A.2d 812, 817 (Me. 1985) (citation omitted). The government cannot thwart criticism by pretending it poses a safety risk. This is not a case about true threats or fighting words—this is about First Amendment-protected speech.

Appellees make a convoluted argument by citing *Davison* and *Fairchild*. (Response Br. at 25-26).  In *Davison*, a school board rule prohibited harassing and *personal* attacks. *Davison v. Rose*, 19 F.4th 626, 634 (4th Cir. 2021).  In *Fairchild*, a school board rule prohibited discussing expressly defined *personnel* matters. Appellees combined these two cases together to argue that any discussion of government school employees will put them in danger and, therefore, it is reasonable to restrict all discussions related to government school employees.  (Response Br. at 25-26).  This is untenable.  Criticism might bother the government employees, but it does not make anything "unsafe" except their desire to operate without criticism.

On its face, Rule 2 does not expressly provide for a restriction of all discussion related to government school employees, though the District Court rewrote the Rule to suggest as much.  Under Rule 3(c), Appellees are more explicit that all discussion of government school employees is prohibited.  Appellees do not, nor can they, explain how this expansive reading of "personnel matters," banning all discussion relating to government employees, is reasonable under the forum's requirement that "school and education matters" shall be allowed.  20-A M.R.S. § 1001(20).

### 3.4    Rule 2 is Viewpoint Discriminatory As-Applied

McBreairty requested an injunction asking the District Court to enjoin Defendant-Appellees "from prohibiting Mr. McBreairty from public comment based on viewpoint discrimination and from enforcing BEDH Public Participation Policy

Rule 2." (AA023).  McBreairty also requested damages for the violation of his First Amendment Rights.   (AA005-AA008).   Appellees admit a live controversy continues to exist, and they will continue preventing McBreairty from discussing matters relating to government school employees during public comment. (Response Br. at 18).  Therefore, this Court should evaluate the Court's erroneous decision denying injunctive relief.  *Bayley's Campground, Inc.*, 985 F.3d at 158.

Appellees claim another purpose for the "personnel-matter rule" is to keep confidential information secret. (Response Br. 30-31).  This is pretext to silence McBreairty or other critics.  As explained *supra*, the Maine Legislature identified certain information that must remain confidential pursuant to 20-A M.R.S. § 6101(b).  McBreairty did not discuss any of that kind of confidential information. Miller determined that McBreairty violated Rule 2 for the mere utterance of employee names. (*See* AA063 ¶¶ 25-26).  This was unconstitutional.

Appellees' rest on the justification that "any prior misapplication of the personnel-matter restriction in October would not have obligated Miller to continue to misapply it in February and March." (Response Br. at 30).  This is a fundamental misunderstanding of the record.

Miller, in no uncertain terms, enforced Rule 2 as though a new policy was already adopted.  (*See* AA062 at ¶ 19-20).  Miller admitted that he was enforcing Rule 2 in a manner that defied the direct language in the policy.

- 13 -

Miller has sat on the RSU22 School Board for 10 years. (AA059 at ¶ 1).  In *McBreairty v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79 (D. Me. 2022) ("*McBreairty I")*, it was observed that Miller understood Rule 2 as he "warned Mr. McBreairty several times about not making allegations against school employees[.]" *Id.* at 94. As noted in *McBreairty I*, Miller believed he could ban McBreairty from school board meetings for violating other BEDH Public Participation Policy Rules.  At that time, Miller did not believe that merely uttering a government school employee's name violated Rule 2.

Only after Appellees lost in *McBreairty I* did they orchestrate a new strategy to silence McBreairty.  In the winter of 2022, a school board member "came back to [Miller] with the recommendation that the District *change its policy* BEDH *such that the prohibition on discussion of personnel matters relates not only to negative discussion but also positive discussion*."  (AA061 at ¶ 17) (emphasis added).  Miller stated that "[i]n the meantime, ever since the Board member mentioned this issue to me this past winter, I have been warning and interrupting speakers as soon as they mention an employee's name during public comment period and *I intend to continue doing so until the new policy is adopted*."  (AA062 at ¶ 26) (emphasis added).  In other words, Miller and other school board members knew that Rule 2 only prohibited negative comments and that it was necessary to amend the policy to ban

positive comments.  Moreover, Miller admitted he was going to enforce Rule 2 as though he had the authority to ban all discussion of school employees anyway.

Miller enforced Rule 2 to silence McBreairty because previous attempts to do so failed.  Despite McBreairty previously criticizing government school employees, Miller ambushed McBreairty during the February 15, 2023, school board meeting and called the police to have him removed for the mere utterance of an employee's name. (*See* AA063 at ¶ 26).  Again, on March 15, 2023, Miller enforced Rule 2 and called the police to remove McBreairty for the mere utterance of an employee's name. (*See* AA063 at ¶ 27).  This expansive application of Rule 2 by Miller was a mere pretext because he "disagrees with both Mr. McBreairty's opinions and the unpleasantness that accompanies them." *McBreairty I*, at 96.  Miller admitted that he was enforcing Rule 2 in an unconstitutional manner until such time that a new policy would be adopted. (*See* AA062 at ¶ 20).

McBreairty is the only person ever interrupted, as he is the only person to have the police called on them, on account of Rule 2.  McBreairty criticized the curriculum implemented by a government school employee -- the same curriculum that McBreairty had previously criticized. *See McBreairty I*, at 94.  On the other hand, this very same government school employee was praised at the October 19, 2022, School Board meeting, and Miller along with the other RSU22 School Board

members broke out in a thunderous applause, thanking the speaker for praising their employee. (AA025). This is textbook viewpoint discrimination.

The National Education Association ("NEA") and Maine Education Association ("MEA") focus on the statements made by others across the country. (NEA & MEA Brief at 4-15). This appeal is not about statements made by others. This appeal is about having the ability to discuss matters relating to government school employees during the public comment period at RSU22 School Board meetings. Nowhere in the record has McBreairty made any threats or called for anything remotely close to a threat.

Appellees and the NEA and MEA argue that Board Policy KE provides alternative channels of communication. (Response Br. at 26-27; NEA & MEA Brief at 20). In *Christian Legal Soc. Chapter v. Martinez*, a school club was permitted to host meetings using the law school facilities. 561 U.S. 661, 690 (2010). In other words, the school club had alternative avenues to publicly communicate its messages. Here, Appellees' policy does not provide alternative avenues for McBreairty to publicly communicate his message. (AA076). Board Policy KE requires McBreairty to address the school board in a private setting. (*Id.*) Appellees may argue that McBreairty can publish his opinions via radio broadcasts, television interviews, and other forms of publication outside of the school board setting. However, a different Maine public school (with the same legal counsel) has sued

- 16 -

McBreairty for speaking about government school employees outside of the school board setting.  In that case, a public school district is asking a state court to apply its Workplace Bullying policy to McBreairty to silence him from speaking publicly about government school employees.  *See Hermon School Dept. v. McBreairty*, Case No. Pensc-Civ-2022-00056 (Me. Super.).  The case is now on appeal to the Maine Supreme Judicial Court.  *See Hermon School Dept. v. McBreairty*, Pen-23-191 (Me.).  At the state court level, a Maine public school district is seeking to silence McBreairty from speaking about government school employees outside of the school board meeting setting.  In this case, a Maine school board is seeking to silence McBreairty from speaking about government employees inside the school board meeting setting.  If he cannot speak inside or outside, there are no alternative channels.

Appellees unconstitutionally prohibited discussion on education matters that involve the mere utterance of a government school employee's name.  By the plain language of Rule 2 and the requirements of 20-A M.R.S. § 1001(20), Appellees have applied Rule 2 in an unconstitutional viewpoint discriminatory manner.

### 3.5    Rule 2 is Vague and McBreairty Preserved his Argument

The District Court did not address McBreairty's vagueness argument, erroneously finding it was first raised in the reply brief and was waived, citing an inapposite case referring to *this Court's* rules for appellate briefs.  (ADD018 at n.16).

- 17 -

It is true that when "a moving party raises an argument for the first time in a reply brief, that argument is waived." *Napert v. Gov't Emps. Ins. Co.*, No. 13-cv-10530, 2013 U.S. Dist. LEXIS 108077, *2 n.4 (D. Mass. Aug. 1, 2013). But, contrary to the District Court's misreading of the record, the record demonstrates McBreairty raised the vagueness argument in his moving brief below. (AA033 – AA035). While McBreairty then expanded on this argument in his reply in response to Appellees' arguments, it was not a *new argument*. (AA083 – AA084). McBreairty did what litigants are supposed to do. A moving party may "use a reply brief to clarify arguments previously made or to respond to an argument an opposing party raises in an opposition." *Allied Home Mortg. Cap. Corp. v. Mark*, No. 12-cv-10158, 2014 U.S. Dist. LEXIS 139436, *12 (D. Mass. Sept. 30, 2014).

McBreairty's vagueness rebuttal arguments were responding to claims Appellees made in their opposition, namely Miller's declaration – arguments McBreairty could not have made or anticipated in the Motion. (AA083 – AA084 (citing AA059)). The District Court applied incorrect law and ignored the record in declining to consider McBreairty's vagueness argument, thus committing reversible error.

The full scope of what Rule 2 prohibits remains unclear and Rule 3(c) is no better. Appellees argue that because McBreairty excluded the term "personnel matters" from the subject of his complaint, McBreairty did not preserve a void for

vagueness argument.  (Response Br. at 34).   Appellees also claim the weight of authority is against McBreairty's vagueness arguments.   (Response Br. at 35). *Fairchild*, 597 F.3d at 761 does not support Appellees' argument.  In *Fairchild*, plaintiff "wisely [did] not push the vagueness" argument because "personnel matters" was clearly defined and there was no evidence of arbitrary and discriminatory enforcement.

Here, personnel matters was not defined, and there was evidence of arbitrary and discriminatory enforcement.  In Miller's affidavit, he admitted to arbitrary and discriminatory enforcement.  (AA061 at ¶ 20).  Miller stated that he would continue to interrupt speakers as soon as they mention an employee's name during public comment period and [he] intend[s] to continue doing so until the new policy is adopted.  (*Id.*). This is arbitrary and discriminatory enforcement.  Miller also stated that it occurred to him that personnel matters and positive comments are synonyms under his new understanding of Rule 2.  (AA061 at ¶ 17).  This is evidence that Rule 2 does not provide an ordinary person reasonable notice as to what the rule means because Miller did not arrive at this understanding until after sitting on the board for 10 years. (*Id.*).  This is also odd, because the RSU22 School Board updated their policy in 2020 (Response Br. at 3 n.1), which means that Miller was sitting on the board when Rule 2 was most recently updated, yet he still had no understanding as

to the rules meaning until the winter of 2022.  If he did not know what it meant, no ordinary, reasonable person could be expected to know either.

Because Appellees essentially admit that Rule 2 does not provide a reasonable person notice and that Rule 2 is subject to arbitrary and discriminatory enforcement, and where McBreairty preserved the issue below  (AA083-AA084), this Court should find Rule 2 is unconstitutionally vague.

### 3.6    The Remaining Injunctive Factors Support Injunctive Relief

#### 3.6.1  McBreairty Suffers Irreparable Injury

Appellees argue that McBreairty cannot show irreparable injury solely on the basis of infringement on his First Amendment rights. (Response Br. at 35-36).  In *Respect Maine Pac v. McKee*, the appellants did not present the court with evidence that there were "any actions remaining" under the challenged provisions to enjoin before an election. 622 F.3d 13, 15-16 (1st Cir. 2010).  In contrast, here, McBreairty has shown, and Appellees admit, that they will continue banning McBreairty from speech related to government school employees during its monthly school board meetings.  McBreairty will continue to face irreparable injury from a prior restraint on his speech until this Court intervenes.

#### 3.6.2  Injunctive Relief Would Not Impose Any Harm to Appellees and the Public Interest Favors McBreairty

Appellees argue that they and the public have a significant interest in orderly and efficient meetings. (Response Br. at 37-38).  Miller, not McBreairty, disrupted

- 20 -

school board meetings by enforcing Rule 2 in an unconstitutional manner and calling the police on McBreairty for his constitutionally protected speech.  There will be no harm to Appellees by following the will of the legislature and the Constitution, permitting McBreairty to speak about government school employees.   It is always in the public interest to protect First Amendment rights.  This Court will prevent the chilling of others from speaking their minds as well by granting McBreairty injunctive relief.

**4.0    CONCLUSION**

In light of the foregoing, the Order denying the motion for preliminary injunction should be reversed and Rule 2 and its revision should be immediately enjoined.

Dated: September 15, 2023.                    Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (Bar No. 90629)
Jay M. Wolman (Bar No. 1135959)
Robert J. Morris II (Bar No. 1205891)
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
ecf@randazza.com

*Attorneys for Appellant*
*Shawn McBreairty*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 4,762 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: September 15, 2023.         RANDAZZA LEGAL GROUP, PLLC

                                  /s/ Marc J. Randazza
                                  Marc J. Randazza

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: September 15, 2023.        RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza